UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DANNY R. RICHARDS,

    Plaintiff,

    v.

INDIANA DEPARTMENT OF
CORRECTION, et al.

    Defendants.

CAUSE NO. 3:25-CV-517-HAB-JEM

OPINION AND ORDER

Danny R. Richards, a prisoner without a lawyer, filed a complaint against the Indiana Department of Correction and eight other individuals because he believes he suffers from a disability that is not being adequately accommodated and because he is dissatisfied with his medical care related to that disability. ECF 1. He seeks both monetary damages and accommodations for his disability. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

According to the complaint, Richards was diagnosed with Clostridioides difficile ("C. diff") in August 2008. In February 2009, he underwent a total colectomy. In September 2009, he had another surgery, which removed 98% of his rectum and a portion of his large intestine. This led to the creation of a "J pouch." ECF 1 at 5. A J pouch is "a pouch inside the body that allows a person to get rid of stool in the usual way." https://www.mayoclinic.org/tests-procedures/j-pouch-surgery/about/pac-20385069 (last visited Sept. 30, 2025). In February 2010, Richards underwent another surgery where the J pouch was connected to what remained of his rectum. Richards submitted exhibits with his complaint indicating that he had C. diff again in 2019. He believes he has an active C. diff infection yet again, although Dr. Marthakis has indicated otherwise. Whatever the cause, Richards reports that he is suffering from chronic diarrhea, urinary incontinence, incomplete emptying with frequent urination and bowel movements, and leakage from his bladder and J pouch.

Richards is housed in protective custody and, in the cell house, the only restroom available to him is inside his cell. The Indiana Department of Correction ("IDOC"), Assistant Warden Dawn Buss, Assistant Warden Mr. Nowatzke, Unit Team Manager J. Schneider, Maj. Worlord, Sgt. Robinson, and Sgt. Schmitt have allegedly issued an administrative directive or post order that cell doors remain locked during the three hours of recreation allowed for inmates in Richards' housing area.

The first hour of recreation takes place on the roof. There is not a restroom on the roof, so Richards does not participate in the first hour of recreation and does not get to enjoy fresh air and sunshine. The next two hours of recreation take place inside the cell

house's dayroom. Because his cell door is locked, he does not have immediate access to a restroom. This has caused Richards to urinate and defecate on himself several times. When this occurs, he has been forced to wait up to twenty or thirty minutes to gain access to his cell and clean up. Therefore, he no longer participates in the second or third hour of recreation.

He claims that the Indiana Department of Correction ("IDOC"), Assistant Warden Dawn Buss, Assistant Warden Mr. Nowatzke, UTM Schneider, Maj. Worlord, Sgt. Robinson, and Sgt. Schmitt knows that he suffers from chronic diarrhea, urinary incontinence, and severe pain, but they have disregarded his need for accommodations to enjoy recreation; namely, access to a restroom without delay. Richards reports that the defendants claim the doors are kept closed due to safety and security concerns. However, the unit has eleven inmate sanitation workers, and they are each allowed to keep their cell doors open from 6 a.m. to 6 p.m., including during recreation. The IDOC and other named defendants will not make an exception for Richards. They will only allow him to request permission to have his cell door opened so he can use the restroom. But, when he requests that his cell door be opened, he has been yelled at or told that the doors will open at the top of the hour, consistent with policy. Dr. Nancy Marthakis allegedly informed Assistant Warden Buss, UTM Schneider, Sgt. Robinson, and Sgt. Schmitt that Richards does not suffer from any disability or impairments, his C. diff resolved in 2021, and he only has a chronic illness code, not a disability code. Richards asserts that Dr. Marthakis' refusal to categorize him as suffering from a disability has resulted in a refusal to accommodate his medical needs by the IDOC and

other individual defendants. Richards contends that his C. diff should be treated as a physical impairment that is episodic or in remission. He asserts that he is being denied access to a program or activity, including recreation and a restroom.

*Richards' ADA and Rehabilitation Act Claims*

Richards asserts that the IDOC and each of the individual defendants violated the Americans with Disabilities Act (ADA), 42 U.S.C §§ 12131–12134, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Title II of the ADA provides that qualified individuals with disabilities may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. "Disability" in this context means: "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." *Steffen v. Donahoe*, 680 F.3d 738, 743 (7th Cir. 2012) (citation and internal alteration omitted). Prisons and correctional facilities are public entities within the purview of Title II. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Declaratory and injunctive relief are available under the ADA. *Radaszweski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 606 (7th Cir. 2004). There is uncertainty about the availability of monetary damages under the ADA, so where an inmate seeks monetary damages, the Seventh Circuit has suggested replacing a prisoner's ADA claim with a parallel claim under the Rehabilitation Act, 29 U.S.C`. § 701, because the relief available is "coextensive." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012). Under the

4

Rehabilitation Act, damages are available against a state that accepts federal assistance for prison operations, as all states do. *Id.* To state a claim under the Rehabilitation Act, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program, service, or activity or otherwise discriminated against him because of his disability.[1] *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). "Refusing to make reasonable accommodations is tantamount to denying access[.]" *Jaros*, 684 F.3d at 672 (citation omitted). Additionally, a plaintiff can establish intentional discrimination through a showing of deliberate indifference. *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018). In other words, discrimination occurs when the defendant knows that a violation of these rights is "substantially likely" yet fails to act. *Id.* (citation omitted).

A claim under either the ADA or Rehabilitation Act cannot be brought against individual employees. Any claim under these statutes is a claim against the state agency itself and must be brought against the state agency itself. *See Jaros*, 684 F.3d at 670. Therefore, Richards may not proceed against Assistant Warden Dawn Buss, Assistant Warden Mr. Nowatzke, UTM Schneider, Maj. Worlord, Sgt. Robinson, Sgt. Schmitt, Dr. Marthakis or Centurion Health on a claim pursuant to the ADA or Rehabilitation Act.

---

[1] "[W]ith respect to this lawsuit, the analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons." *Jaros*, 684 F.3d at 670; *see also Conners v. Wilkie*, 984 F.3d 1255, 1260 (7th Cir. 2021) (noting that the standards under the ADA and the Rehabilitation Act are the same except that under the Rehabilitation Act "the plaintiff's disability must be the *sole* reason for the alleged discriminatory action" while the ADA "requires only that [it] be *a* reason for the challenged action") (emphasis in original).

Giving Richards the benefit of the inferences to which he is entitled at this stage of the case, he will be allowed to proceed past the pleading stage on a Rehabilitation Act claim against the IDOC for monetary damages and injunctive relief.[2] Moreover, because the scope of the ADA is slightly more broad than the Rehabilitation Act, *see supra* note 1, he will be allowed to proceed against the IDOC for monetary damages and injunctive relief under the ADA as well.

*Richards' Eighth Amendment Claim for Constitutionally Inadequate Medical Care*

Richards is also suing the IDOC, Dr. Marthakis, Assistant Warden Dawn Buss, Assistant Warden Mr. Nowatzke, UTM Schneider, Maj. Worlord, Sgt. Robinson, and Sgt. Schmitt for providing him with constitutionally inadequate medical care. Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health*

---

[2] Although the Eleventh Amendment generally bars suits for money damages against a state or state agency, the Seventh Circuit has held that states waived their Eleventh Amendment immunity under the Rehabilitation Act by accepting federal funds. *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000).

*Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and

7

quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires something "akin to criminal recklessness," *Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

*Richards' Allegations Against Dr. Marthakis*

Richards has a history of C. diff, in 2008 and again sometime around 2021. He does not provide details regarding when exactly he had C. diff. Based on his symptoms, including frequent diarrhea, Richards believes he is suffering from a recurrence of C. diff. C. diff can recur, and at least one study shows that, after one recurrence, the risk of future recurrence increases. https://wwwnc.cdc.gov/eid/article/29/5/22-1294_article (last visited Sept. 30, 2025). Richards also notes that Individuals with a J pouch can

8

suffer from other serious infections, such as pouchitis.[3] He believes that Dr. Marthakis should test him regularly for C. diff or send him to a gastrointestinal specialist who can perform a colonscopy or pouchoscopy to check on his J pouch.

When Richards tries to discuss his concerns with Dr. Marthakis, she becomes upset. Richards feels that Dr. Marthakis is belittling; she tells him he does not know what he is talking about and emphasizes that she is the doctor. For example, Dr. Marthakis told Richards that he does not continue to suffer from C. diff, but when Richards asked Dr. Marthakis how she knows he does not have C. diff, she pointed to her diploma and said, "Do you see that document on my wall[?] [I]t says Doctor. Do you have one Mr. Richards?" She then ended the meeting.

Richards' complaint demonstrates that Dr. Marthakis' bedside manner is lacking. Common decency requires that a treating physician answer her patient's questions about his medical condition with respect, but that is not a matter of constitutional concern. This court must focus on Richards' medical conditions and the care he did or did not receive. It is unclear from the complaint when Richards saw Dr. Marthakis, what information he provided her about his symptoms, what tests were performed, or what treatments were offered. Without additional details, the court cannot conclude that Dr. Marthakis' decision to forego a test for C. diff and a referral to a specialist amount to deliberate indifference. However, given Richards' medical history, the

---

[3] Pouchitis is "inflammation… in the lining of a pouch made during surgery to remove the colon." https://www.mayoclinic.org/diseases-conditions/pouchitis/symptoms-causes/syc-20361991 (last visited Sept. 30, 2025).

symptoms he describes are concerning. Therefore, the court will direct the clerk to add the Warden of the Indiana State Prison in his official capacity as a defendant and will permit Richards to proceed on a claim for injunctive relief against the Warden to obtain constitutionally adequate care for his symptoms of diarrhea, urinary incontinence, and pain. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out.").

*Richards' Allegations Against Assistant Warden Buss, Assistant Warden Nowatzke, UTM Schneider, Maj. Worlord, Sgt. Robinson, and Sgt. Schmitt*

Richards is also suing Assistant Warden Buss, Assistant Warden Nowatzke, UTM Schneider, Maj. Worlord, Sgt. Robinson, and Sgt. Schmitt for deliberate indifference to his medical needs. As noted earlier in this order, Richards contends that each of these defendants is aware that he suffers from chronic diarrhea and urinary incontinence, as well as severe pain. He argues that their failure to insist that Dr. Marthakis do her job right and test him amounts to deliberate indifference. But none of these individuals are doctors. Non-medical staff rely on medical experts and are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Here, no medical provider determined that Richards' reports of ongoing diarrhea, urinary incontinence, or pain requires additional testing. It cannot be plausibly inferred from the facts alleged in the complaint that any of these non-medical defendants were deliberately indifference to Richards' medical needs.

*Richards' Allegations Against IDOC*

Richards has also named the IDOC as a defendant that allegedly violated his Eighth Amendment right to adequate medical care. Eighth Amendment claims must be brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for constitutional violations by people acting under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The IDOC is an arm of the state and, as such, cannot be sued in federal court under 42 U.S.C. § 1983. *See Wagoner v. Lemmon,* 778 F.3d 586, 592 (7th Cir. 2015). States and state agencies are not "persons" for the purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003). Therefore, he cannot proceed on an Eighth Amendment claim against the IDOC.

*Richards' Allegations Against Centurion Health*

Richards is suing Centurion because Dr. Marthakis says that he does not fit Centurion's criteria to be considered disabled, and other defendants have used that information to conclude that he does not qualify for accommodations under the ADA or Rehabilitation Act. A private company performing a public function can be held liable if its own policies caused an alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Here, Richards has not alleged facts from which it can be plausibly inferred that Centurion had a policy that caused Dr. Marthakis to find that

11

he did not suffer from a disability. To the extent that there was an error in categorizing Richards, there are no facts suggesting that that error is anything more than Dr. Marthakis' error. Richards has not identified any specific unconstitutional policy, practice, or custom of Centurion. Instead, he merely speculates that because Marthakis determined that he did not suffer from a disability as it has been defined by Centurion, the policy must be unconstitutional. Therefore, he may not proceed against Centurion.

*Richards' Allegations of Unconstitutional Conditions of Confinement*

Richards is suing each individual defendant for subjecting him to unconstitutional conditions of confinement. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with

deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

According to Richards, he has been forced to forego recreation, and this poses a risk of serious damage to his future health. He does not mention any other condition of confinement that is allegedly inadequate, and he does not explain how a lack of recreation has affected his health. Here, Richards has not alleged that he was deprived of all physical activity. Though a total lack of exercise would state a claim "[w]here movement is denied and muscles are allowed to atrophy," *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), the denial of "desirable, entertaining diversions . . . [do] not raise a constitutional issue," *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988).

> Recreation and the ability to obtain physical exercise have been properly recognized as important human needs. See, *e.g., Davenport v. DeRobertis,* 844 F.2d 1310, 1315–16 (7th Cir.1988). However, there is no constitutional right to a specific form of recreation. Rather, only the objective harm that *can* result from a significant deprivation of movement implicates the Eighth Amendment. *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985) (the Eighth Amendment is implicated where a denial of exercise causes the muscles to atrophy and threatens the health of the individual).

13

*Douglas v. DeBruyn*, 936 F. Supp. 572, 578 (S.D. Ind. 1996); *see also Smith v. Erickson*, 684 Fed. Appx. 576, 578–79 (7th Cir. 2017) (collecting cases and recognizing the distinction between the denial of "recreation," which did not state a plausible constitutional violation, versus the denial of exercise in its entirely, which could). Richards has not alleged that he has been denied all exercise, and he therefore cannot proceed on a conditions of confinement claim.

*Richards' Request for a Preliminary Injunction*

Richards also filed a motion seeking a preliminary injunction. ECF 10. He seeks the following injunctive relief:

1) An order that his cell door remain open during recreation;
2) An order directing that both centurion and the IDOC designate him as disabled;
3) An order that Centurion immediately send him out to be evaluated by a gastroenterologist to check on his J-pouch; and
4) An order that Centurion place Richards back on Neurontin to address his pain, because he indicated he has never abused his medication despite Dr. Marthakis' allegation to the contrary.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

14

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted).

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions – those requiring an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted).

Additionally,

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quotation marks, brackets, and citations omitted).

15

After a review of Richards' complaint, motion for preliminary injunction, and the exhibits attached to the motion, the court has determined that further briefing is required on both Richards' ADA and Rehabilitation Act claims for injunctive relief and his Eighth Amendment claim for injunctive relief. The Commissioner and Warden will have an opportunity to respond to the motion, and Richards will have an opportunity to file a reply.

For these reasons, the court:

(1) GRANTS Danny R. Richards leave to proceed against the IDOC for monetary damages for failing to accommodate Richards' disability by providing him with prompt access to a restroom so he can enjoy the benefits of recreation, in violation of the ADA and the Rehabilitation Act;

(2) GRANTS Danny R. Richards leave to proceed against the IDOC for injunctive relief to accommodate his disability by providing prompt access to a restroom so he can enjoy the benefits of recreation, to the extent required by the ADA and the Rehabilitation Act;

(3) DIRECTS the clerk to add the Warden of the Indiana State Prison in his official capacity as a defendant;

(4) GRANTS Danny R. Richards leave to proceed against the Warden of the Indiana State Prison in his official capacity for injunctive relief to receive constitutionally adequate medical care for his severe diarrhea and pain, in violation of the Eighth Amendment;

(5) DISMISSES all other claims;

16

(6) DISMISSES Assistant Warden Dawn Buss, Assistant Warden Mr. Nowatzke, Unit Team Manager J. Schneider, Maj. Worlord, Sgt. Robinson, Sgt. Schmitt, Dr. Marthakis, and Centurion Health;

(7) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Indiana Department of Correction and Warden of the Indiana State Prison at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(8) DIRECTS the Clerk to fax or email a copy of the request for waiver of service, this order, the complaint (ECF 1), and the motion for preliminary injunction (ECF 10) to **both** the Warden of the Indiana State Prison and the Commissioner of the Indiana Department of Correction;

(9) ORDERS the Commissioner of the Indiana Department of Correction to respond to the request for preliminary injunction contained in Richards' complaint to the extent that it concerns his claims under the ADA and Rehabilitation Act, and file an affidavit or declaration with the court, explaining whether Richards is disabled within the meaning of the ADA and Rehabilitation Act and, if so, how his disabilities are being accommodated in a manner that complies with the ADA and Rehabilitation Act by **October 27, 2025**;

(10) ORDERS the Warden of the Indiana State Prison to respond to the request for preliminary injunction contained in Richards' complaint to the extent that it concerns his Eighth Amendment claim that his medical care has been constitutionally

17

inadequate, and file an affidavit or declaration with the court, explaining how Richards' medical care for his and severe diarrhea and related pain is being addressed in a manner that comports with the Eighth Amendment's requirements by **October 27, 2025**;

(9) GRANTS Richards until **November 21, 2025**, to file replies to the Commissioner's and Warden's responses;

(11) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(12) ORDERS, under 42 U.S.C. § 1997e(g)(2), IDOC and the Warden of Indiana State Prison and Commissioner of the IDOC in their official capacities respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 1, 2025

/s/Gretchen S. Lund  
JUDGE  
UNITED STATES DISTRICT COURT