UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DANNY R. RICHARDS,

Plaintiff,

v.

IND. DEPT. OF CORRS., et al.,

Defendants.

CAUSE NO. 3:25-CV-517-GSL-JEM

OPINION AND ORDER

Danny R. Richards, a prisoner without a lawyer, filed a motion for a preliminary injunction seeking disability accommodations and medical care. ECF 10. "[A] party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Cassell v. Snyders*, 990 F.3d 539, 544–45 (7th Cir. 2021). "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id.* "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Instead, the issuance of

an injunction is committed to the "sound discretion" of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

Richards proceeds on: (1) a claim for damages under the Americans with Disabilities Act (ADA) and the Rehabilitation Act against the Indiana Department of Correction for failing to accommodate Richards' disability by providing him with prompt access to a restroom during recreation, (2) injunctive relief claim under the ADA and Rehabilitation Act against the Indiana Department of Correction to accommodate his disability with prompt access to restrooms during recreation; and (3) a claim for injunctive relief the Warden of the Indiana State Prison in his official capacity for injunctive relief to receive the medical care for severe diarrhea and pain to which is entitled under the Eighth Amendment.

According to the complaint, Richards was diagnosed with *Clostridioides difficile* ("*C. diff.*") in August 2008. In February 2009, he underwent a total colectomy. In September 2009, he had another surgery, which removed 98% of his rectum and a portion of his large intestine. This led to the creation of a "J pouch." ECF 1 at 5. A J pouch is "a pouch inside the body that allows a person to get rid of stool in the usual way."[1] In February 2010, Richards underwent another surgery where the J pouch was connected to what remained of his rectum. Richards submitted exhibits with his complaint indicating that he had *C. diff.* again in 2019. He believes he has *C. diff.* again, although Dr. Marthakis has indicated otherwise. Whatever the cause, Richards reports

---

[1] Mayo Clinic, https://www.mayoclinic.org/tests-procedures/j-pouch-surgery/about/pac-20385069 (last visited March 12, 2026).

chronic diarrhea, urinary incontinence, incomplete emptying with frequent urination and bowel movements, and leakage from his bladder and J pouch.

According to the complaint, Richards is housed in protective custody and, in the cell house, the only restroom available to him is inside his cell. An administrative directive requires that cell doors remain locked during the three hours of recreation allowed for inmates in Richards' housing area. The first hour of recreation takes place on the roof. There is not a restroom on the roof, so Richards does not participate in the first hour of recreation and does not get to enjoy fresh air and sunshine. The next two hours of recreation take place inside the cell house's dayroom. Because his cell door is locked, he does not have immediate access to a restroom. This has caused Richards to urinate and defecate on himself several times. When this occurs, he has been forced to wait up to twenty or thirty minutes to gain access to his cell and clean up. Therefore, he no longer participates in the second or third hour of recreation.

In the motion for a preliminary injunction, Richards specifically asked for the court to order that his cell door remain open during recreation, that both Centurion and the IDOC designate him as disabled; that he receive an immediate evaluation by a gastroenterologist to check on his J-pouch; and that medical staff place him back on Neurontin to address his pain. To start, the court denies the motion for a preliminary injunction to the extent it seeks an order from Neurontin. Richards provides few facts supporting this request. The facts he has provided do not suggest that he has a serious medical need for Neurontin, that medical staff's refusal to provide it amounts to deliberate indifference, or that it has resulted in irreparable harm.

Further, the request that Centurion and the IDOC designate him as disabled does not appear to arise from the claims in this case. Such a designation does not amount to medical treatment, and, though it may have some relationship to disability accommodations, it does not strike the court as an accommodation in and of itself. Instead, it appears to arise from the agreement entered into by Richards after settling another federal case. Richards does not proceed in this case on claim for enforcement of a settlement contract. *See Lynch, Inc. v. SamataMason, Inc.*, 279 F.3d 487, 489 (7th Cir. 2002) ("Because the parties are not diverse, any suit to enforce the settlement agreement in this case would have to be brought in state court even though the settlement was of federal as well as state claims."). Even if he did, it would remain unclear how the lack of disability designation, by itself, amounts to a violation of the ADA/Rehabilitation Act or irreparable harm. Therefore, the court denies the motion for a preliminary injunction to the extent it seeks a disability designation. Nevertheless, the requests for access to restrooms during recreation and for a gastroenterologist consultation warrant further consideration.

Restroom Access

Richards seeks an order that his cell door remain open during recreation. Title II of the ADA provides that qualified individuals with disabilities may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. "Disability" in this context means: "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having

4

such an impairment." *Steffen v. Donahoe*, 680 F.3d 738, 743 (7th Cir. 2012) Prisons and correctional facilities are public entities within the purview of Title II. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Under the Rehabilitation Act, damages are available against a State that accepts federal assistance for prison operations, as all States do. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012). To state a claim under the Rehabilitation Act, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program, service, or activity or otherwise discriminated against him because of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672.

In response, the defendants explain that, since June 2024, they have maintained a policy of locking cells during recreation to prevent inmates from harming other inmates and their property. Richards has personally experienced this type of harm at the hands of other inmates. According to the Warden, Richards can access a restroom during recreation through other measures, including by asking correctional staff to open his cell door as needed and by using the restroom when the cell doors are opened for ten minutes in the middle of the three-hour recreation period. Correctional staff can open doors electronically from the officer station. The protective custody unit is small, and an officer is generally in the officer station except for emergencies, so significant delays are unlikely. The Warden suggests that Richards can also use adult diapers during recreation.

Richards represents:

5

> The plaintiff has on numerous occasions tried to gain access to his restroom, and he has either been yelled at and told per policy doors will open at the top of the hour, which has led to Plaintiff either defecating or urinating on himself.

ECF 1 at 7. He also objects to relying on adult diapers, given that he would still be around other inmates during recreation in soiled diapers and that he would also need to dispose of the soiled diapers and to shower. ECF 32 at 4.

The parties' dispute appears to center on whether the accommodation currently offered to Richards is reasonable. The court agrees that the defendants have offered an accommodation that is reasonable in theory. What they seem to envision is that Richards utilize the restrooms at the halfway point of recreation and to request that correctional staff unlock his cell door if he needs additional restroom access. In the unlikely event that correctional staff are unable to grant his requests to unlock the door, Richards can rely on adult diapers. That said, the implementation of this reasonable accommodation appears to be disputed. Significantly, Richards represents that his requests to unlock his cell door has been refused, delayed, and discouraged by correctional staff on "numerous" and "frequent" occasions.

The reasonableness of the accommodation seems to turn on its effectiveness in allowing Richards to meaningfully participate in recreation. However, the court is unable to discern with any particularity the frequency of Richards' need to use the restroom during recreation hours and the frequency with which correctional staff refuse or delay Richards' requests to unlock his cell door and result in him soiling himself. If such delays and refusals are only occasional, then the accommodation offered by the

6

defendants are likely reasonable. By contrast, if the delays and refusals frequently result in Richards' soiling himself, then the accommodation is likely not reasonable. Reliance on adult diapers strikes the court as a reasonable back up plan if it is only occasionally required, but too much reliance on adult diapers strikes the court as tantamount to denying Richards access to recreation. It seems fair to say that a prisoner cannot meaningfully participate in recreation in soiled diapers and that an accommodation that contemplates frequent incidents of soiled diapers during the time intended for recreational activity is not a reasonable one.

In sum, the court requires additional information to rule on this portion of the motion for a preliminary injunction. Specifically, the court seeks more information about the frequency of Richards' need to use the restroom during recreation hours and the frequency with which correctional staff refuse or delay Richards' requests to unlock his cell door and result in him soiling himself. It is not enough for Richards to say that there were "numerous" or "several" occurrences, nor is it enough for the defendants to rely on supposition as to how often refusals or delays should theoretically occur. While the court understands that the parties may not have formally recorded every relevant incident, the court is entirely unable to discern the likelihood of relevant incidents on this record.

The defendants should also address whether they might accommodate Richards by leaving his cell door unlocked if he had a disability code or a medical recommendation or if he had submitted a reasonable accommodation form pursuant to

departmental policy. Similarly, Richards should state whether he has submitted a reasonable accommodation form since submitting his reply brief.

Gastroenterology Consultation

Richards seeks an order for him to be immediately evaluated by a gastroenterologist to check on his J-pouch, and this request is related to his Eighth Amendment claim for injunctive relief to obtain medical care. Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one

8

proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

In the complaint, Richards alleges in pertinent part:

Furthermore, Dr. Nancy Marthakis refuses to test this Plaintiff regularly for the highly contagious bacterium *C. diff.* or send Plaintiff out to a gastrointestinal specialist to undergo a colonoscopy or a pouchoscopy to check on the health of the Plaintiff's J pouch. A J pouch is subjected to serious infections such as pouchitis.

When Plaintiff tries to discuss these concerns with Dr. Marthakis, she becomes upset and tries to belittle the Plaintiff by telling him he's not a doctor, she is, and he doesn't know what he's talking about but in or about 2014 Plaintiff was in fact diagnosed with the infection known as pouchitis.

Dr. Marthakis claims that Plaintiff no longer suffers *C. diff.* and when Plaintiff asked her how she came to that conclusion, Dr. Marthakis stated, "Do you see that document on my wall? It says doctor. Do you have one, Mr. Richards?," and ended the visit.

ECF 1 at 9. According to Richards, medical professionals refuse to discuss his concerns and to properly document his concerns in his medical records. ECF 7 at 6. He also represents that his medical requests for J pouch concerns go unanswered. *Id.* at 7. Nevertheless, the defendants rely on the absence of any medical requests or medical

records in which Richards has expressed concerns about his J pouch, and they do not address Richards' struggles with persuading medical staff to entertain his concerns.

While Richards' showing falls short of demonstrating that he is constitutionally entitled to a gastroenterology consultation, it does tend to suggest that medical staff are acting with deliberate indifference towards Richards' medical concerns. The alleged references by Dr. Marthakis to the educational disparity between Richards and herself do not reflect a decision based on professional medical judgment. Nor is it clear why a medical professional would refuse to respond to or to document in medical records a patient's good faith medical concerns.

At base, the court would prefer to know the medical reasons for refusing Richards' requests, if any, before ruling on this portion of the motion for a preliminary injunction. As a result, the court will grant the defendants an opportunity to provide a medical explanation for refusing Richards' requests for specific medical treatment, whether through additional medical records, a sworn affidavit from a medical professional, or otherwise.

As a final matter, Richards filed a motion for the court to infer from the defendants' representations in the preliminary injunction briefing that "Plaintiff is not being provided medical treatment for all of the Plaintiff's serious medical needs and conditions." ECF 40. The defendants' representations do not fairly lead to this inference, and, even if they did, it would not materially benefit Richards in this case because the inference does not specifically implicate the medical concerns relevant to this case. Therefore, this motion is denied.

10

For these reasons, the court:

(1) DEFERS a ruling on the motion for preliminary injunction (ECF 10);

(2) ORDERS Danny R. Richards to provide a response to this Order by April 3, 2026;

(3) ORDERS the defendants to provide a response to this Order by April 17, 2026;

(4) ORDERS Danny R. Richards to file a reply by May 8, 2026; and

(5) DENIES the motion for an inference (ECF 40).

SO ORDERED on March 13, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT

11